1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALEC MANGALIMAN,

                    Plaintiff,                         Case No. CV11-1591 RSM

        v.

WAHINGTON STATE DOT, *et al.*

                    Defendants.                        ORDER ON SUMMARY JUDGMENT

        THIS MATTER comes before the Court on Motion for Summary Judgment by

Defendants. Dkt. # 52. Defendants seek dismissal with prejudice of all claims against them

asserted by Plaintiff Alec Mangaliman in his Third Amended Complaint. Dkt. # 31. Having

considered the records and files herein, including the parties' supplemental response and reply

briefs, and for the reasons set forth below, Defendant's Motion is GRANTED.


                                    **BACKGROUND**

        Plaintiff Alec Mangaliman, who is of Filipino origin, was employed by the Washington

State Department of Transportation ("WSDOT") from 1999 through August 2010 as a "materials

tester."  Materials testers serve as the "eyes" of WSDOT project engineers, performing a quality

assurance function in assuring that materials applied on highway projects meet specifications. Dkt. # 57, ¶ 4.

For his first several years, Mangaliman worked as a Transportation Technician 2 ("TT2") at WSDOT's Northwest Regional Bothell Project office located in Bothell, Washington. From the beginning of his employment, Mr. Mangaliman's performance reviews indicated that his work consistently fell below expectations. His first performance review found that he was "not producing work that meets normal expectations of quality," that he lacked basic skills essential to his job and manifested a "reluctance to learn" in order to correct deficiencies. *See* Dkt. # 55, Ex. 8. His second performance review of September 2000 suggested slight improvements but that Mangaliman was "still having problems with consistently producing work that meets normal expectations of quality." *Id.* at Ex. 9. As a result, Mr. Mangaliman's supervisors enrolled him in courses to help him improve his writing and presentation skills. *Id.* at p. 2.

On February 1, 2002, Mangaliman was auto-promoted from TT2 to a level TT3 position as a result of his three years of service and success in passing a statewide written examination, with a score of 41 out of 85 points, or two points above the minimum. *Id.* at Ex. 10. Mangaliman's substandard performance reviews continued following his promotion. *See* Dkt. # 31, ¶ 24. On April 18, 2006, Mangaliman filed a complaint with WSDOT's Office of Equal Opportunity ("OEO"), alleging that WSDOT discriminated against him based on his race, national origin, and age and retaliated against him. Dkt. # 70, Ex. D. The complaint focused on grievances against his supervisors for requiring him to undergo regular performance reviews and for refusing to promote him to a Transportation Engineer position. OEO responded to Mangaliman that the "majority of [his] complaint falls under Human Resources (HR)" and

1    requested further information. *Id.* at Ex. E. WSDOT dropped the investigation into the complaint

2    when Mangaliman failed to follow up with the information requested. Dkt. # 57, Ex. 11, pp. 10-

3    11.

4        In April 2007, Mangaliman was transferred to David Lindberg's P.E. Office in Redmond,

5    WA as part of a reasonable accommodation in response to statements by Mangaliman's

6    physician indicating that he was unable to perform essential job functions at his previous work

7    place. Dkt. # 58, Ex. 1. As a condition of his transfer, Mangaliman was provided the standard 60-

8    day window from the start of his employment with Lindberg to "become a fully qualified tester

9    including certification in aggregate testing and [hot-mix asphalt] plant inspection" in order to

10   fulfill his specified essential job functions. *Id.*; Dkt. # 58, ¶¶ 4, 5. All qualifications tests are

11   taken at WSDOT Materials Labs and administered by Independent Assurance Inspectors.

12   Mangaliman was unable to obtain certification within 60 days and also unable to correctly

13   perform test procedures and obtain accurate results in the field. *Id.*

14       Despite failing qualifications tests, Mangaliman was permitted to continue working at

15   Lindberg's P.E. Office from April 2007 through December 2009. During this period, he received

16   three Performance Reviews, each of which reported his performance to be "below standard" or

17   "unacceptable" in multiple areas. *See*, Dkt. # 58, Ex. 3; Ex. 4 (reporting Plaintiff's performance

18   "below standards" in results orientation and materials tests, and "unacceptable" in

19   "accountability/follows directions."); Ex. 5 ("below standards" in three behavioral and

20   performance core competencies). Several of his supervisors also found him to be "incompetent"

21   to perform his job as a materials tester, despite the provision of one-on-one training, extra time at

22

23

24

25

26

work for studying and training, and direct assistance from an engineer in passing his qualification tests. *See* Dkt. # 58, ¶ 7; Dkt. # 57, ¶ 11; Dkt. # 53, ¶ 6.

On June 23, 2009, WSDOT issued Mangaliman a formal "Letter of Concern," addressing his failure to pass the tests necessary to gain qualifications at a TT3 Materials Tester two years after his transfer to Lindberg's Office. *See* Dkt. # 58, Ex. 6. The Letter provided him a deadline of July 17, 2009 to "become certified in all aspects of materials testing process within David Lindberg's office, including the HMA plant inspection." *Id.* at p. 2. After Mangaliman failed to become fully qualified, was witnessed handling a Nuclear Gage in an insecure manner, and produced faulty asphalt test results in the field, he received a letter advising him of possible disciplinary actions and setting a disciplinary hearing.  Dkt. # 54, ¶¶ 5-6; Dkt. # 58, Ex. 7. Following the hearing, WSDOT formally demoted Mangaliman from TT3 to TT2 by letter dated January 13, 2010. *See* Dkt. # 58, Ex. 8 (detailing performance-based reasons for Mangaliman's demotion).

Following his demotion, Mangaliman was assigned to the South End Viaduct Project under Project Engineer Paul Johnson as part of a shift in workers to meet staffing requirements for the Alaska Way Viaduct project. Mangaliman remained under Johnson's supervision until his termination in August 2010. Dkt. # 60, ¶ 4-5. Johnson placed Mangaliman under a six-month performance improvement plan ("PIP") and assigned Transportation Engineer Brian Curtis to mentor, train, and assist him during that period. Johnson informed Mangaliman in person and by written memorandum that failure to meet plan objectives could result in "further disciplinary action, including termination."*Id.* at ¶ 5, Ex. 1.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Again, Mangaliman's supervisors found that he was unable to obtain most materials testing qualifications and to maintain those for modules that he passed as he failed to properly apply testing procedures in the field. In sum, Mangaliman failed approximately 60 tests in a span of six years, a failure rate that his supervisors contend is unprecedented. *See* Dkt. # 57, ¶ 7. After Mangaliman and a fellow junior tester improperly performed field tests for concrete, WSDOT revoked both of their concrete testing qualifications for 21 days. *Id.* at ¶ 8. Assistant Project Engineer Scott Hart also observed Mangaliman sleeping at work on multiple occasions while on his six-month performance improvement plan, including in the office, at his desk, and during class. *See* Dkt. # 56. Hart documented several of these incidents with detailed contemporaneous notes, photographs, and video. *Id.* at Ex. 1-3. Mangaliman additionally failed to follow basic Nuclear Gauge safety measures during the PIP period. His Nuclear Badge was consequently put on hold, limiting his ability to perform certain materials tests. *See* Dkt. # 54, ¶¶ 12-13.

Following notification and opportunity to respond, WSDOT terminated Mangaliman's employment on August 19, 2010. His termination letter provided as grounds Mangaliman's substandard work performance, sleeping on duty, and Nuclear Gauge violations. *See* Dkt. # 60, Ex. 3. Mangaliman filed an EEOC complaint on October 27, 2010, alleging that WSDOT discriminated on against him on the grounds of his race, age, and national origin and took retaliatory action against him. Dkt. # 71, Ex. B. His union also filed but abandoned a grievance. Dkt. # 55, Ex. 6, p. 185.

Mangaliman filed the instant action *pro se* against 12 defendants on September 21, 2011. He was subsequently appointed counsel and filed his currently controlling Third Amended Complaint in August 2012. *See* Dkt. # 31. Five Defendants have since been dismissed. *See* Dkt.

1   # 39. The seven remaining Defendants consist of WSDOT, WSDOT's former Secretary, and five

2   WDOT employees from the last two Project Engineering offices where Mangaliman worked.

3   Mangaliman has dismissed with prejudice his claims related to age, disability, the Family and

4   Medical Leave Act, and retaliation based on those claims. *See* Dkt. # 41. The only claims

5   remaining allege disparate treatment and hostile work environment based on race and national

6   origin as well as retaliation, pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. §

7   20001e), 42 U.S.C. §§1981 and 1983, and the Washington Law Against Discrimination (RCW

8   49.60). The gravamen of these claims is that Mangaliman was not promoted, was demoted, and

9   was terminated based on his race and national origin.

10

11

12                                **STANDARD OF REVIEW**

13

14          Federal Rule of Civil Procedure 56(a) permits parties to move for summary judgment on

15  all or part of their claims. Summary Judgment is proper where "the movant shows that there is no

16  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

17  law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material

18  facts are those that may affect the outcome of the suit under governing law. *Anderson*, 477 U.S.

19  at 248. An issue of material fact is genuine "if the evidence is such that a reasonable jury could

20  return a verdict for the nonmoving party." *Id.* In ruling on a motion for summary judgment, the

21  court does "not weigh the evidence or determine the truth of the matter but only determine[s]

22  whether there is a genuine issue for trial." *Crane v. Conoco*, 41 F.3d 547, 549 (internal citations

23  omitted).

24

25

26

ORDER ON SUMMARY JUDGMENT - 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The moving party bears the initial burden of production and the ultimate burden of persuasion. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The moving party must initially establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party defeats a motion for summary judgment if she or he "produces enough evidence to create a genuine issue of material fact." *Nissan Fire*, 969 F.2d at 1103. By contrast, the moving party is entitled to summary judgment where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof" at trial. *Celotex*, 477 U.S. at 322. "[T]he inferences to be drawn from the underlying facts…must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F.3d 337, 345 (9th Cir. 1995). Nor should the Court adopt a version of events presented by the non-moving party where it is "blatantly contradicted by the record" such that no reasonable jury could believe it. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## ANALYSIS

**A. State Tort Claims**

Defendants move to dismiss Plaintiff's claims under the Washington Law against Discrimination ("WLAD"), RCW 49.60, for failure to comply with the procedural requirements of RCW 4.92.100 and RCW 4.92.110. Under RCW 4.92.100, a plaintiff is required to file a

claim with the Office of Risk Management before filing a tort action against the State of

Washington or against State employees. RCW 4.92.110 further provides in relevant part:

> No action subject to the claim filing requirements of RCW 4.92.100 shall be commenced against the state, or against any state employee…for damages arising out of tortious conduct until sixty calendar days have elapsed after the claim is presented to the office of risk management.

The filing requirements of RCW 4.92.100 and 4.92.110 are mandatory and operate as a condition

precedent to recovery. *Levy v. State*, 91 Wash.App.934, 942, 957 P.2d 1272 (1998). The

Washington Supreme Court has held that the pre-claim notice requirements of RCW 4.92.110

apply to a state law discrimination action, which it has characterized as a tort. *See Blair v.

Washington State University*, 108 Wash.2d 558, 576, 740 P.2d 1379 (1987). Failure to comply

with the filing requirements ordinarily results in the dismissal of the suit. *See, e.g.*, *Levy*, 91

Wash. App. at 944; *Reyes v. City of Renton,* 121 Wn.App. 498, 502, 86 P.3d 155 (2004).

Plaintiff does not contest that the claim filing statutes apply but rather contends that the

Court should disregard their requirements on equitable grounds. For this proposition, Plaintiff

relies entirely on *Miotke v. Spokane*, 1901 Wn.2d 307, 678 P.2d 803 (1984)(rev'd on other

grounds, *Blue Sky Advocates v. State*, 107 Wn.2d 112, 727 P.2d 644 (1986)). In *Miotke*, the

Washington Supreme Court held that the State waived its objection to plaintiff's failure to file a

claim pursuant to RCW 4.92.110 where it did not raise the defense until substantial litigation had

occurred. The Court found "substantial litigation" where three years of litigation had passed,

several days of hearings had been conducted, and the trial court has entered its first set of

findings and conclusions before the affirmative defense was raised. *Id.* at 337.

No such waiver has occurred in this case. Defendants timely raised Plaintiff's failure to

comply with RCW 4.92.100 as an affirmative defense in their original and amended answers, as

well as in their Motion for Summary Judgment. *See* Dkt. # 25, p. 10; Dkt. # 32, p. 10; Dkt. # 52.

*See Mercer v.* State, 48 Wash.App. 496, 501, 739, P.2d 703 (1987) (finding that the "unique facts

establishing a waiver in *Miotke*" were not present where the State raised RCW 4.92.110 as an

affirmative defense in its answer to plaintiff's complaint). Though Plaintiff confusingly asserts

that he intends to file a State claim notice, Plaintiff's intent to comply in the future does not

relieve the Court of its duty to enforce the statutorily codified condition precedent in the instant

case. As Defendants timely asserted their affirmative defense and Plaintiff has failed to comply

entirely with the condition precedent of RCW 4.92, Plaintiff's state law discrimination claims

shall be dismissed.

### B.  42 U.S.C. §§ 1981 and 1983 Claims

Defendants move to dismiss Plaintiff's claims under sections 1981 and 1983 on the

grounds that they are barred by Eleventh Amendment immunity. The Eleventh Amendment

immunizes agencies of the state from private damage actions or suits for injunctive relief brought

in federal court, including as claims under 42 U.S.C. §§ 1981 and 1983. *See Mitchell v. Los

Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1988). State agencies acquire

such immunity where they act as "dependent instrumentalities of their state." *Jackson v.

Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982). Eleventh Amendment immunity also extends to

state employees acting in their official capacity. *Mitchell*, 861 F.2d at 201 (affirming dismissal of

§§ 1981 and 1983 claims against a state entity and its employees acting in their official capacity

based on Eleventh Amendment immunity). Defendants contend that WSDOT was acting as the

arm of the state so as to acquire Eleventh Amendment immunity and further that the other

remaining Defendants in this case, current and former WSDOT employees, were all acting in their official capacity at the time of the allegedly unlawful incidents.

Plaintiff has not opposed the dismissal of his §§ 1981 and 1983 claims or otherwise objected to the facts asserted by Defendants that provide grounds for dismissal. Where an opposing party fails to properly address another party's assertion of fact, the court may consider the fact undisputed for the purpose of a summary judgment motion and grant summary judgment if the motion and supporting materials show that the movant is entitled to it. Fed. R. Civ. P. 56(e). Such is the case here, and Plaintiff's §§ 1981 and 1983 claims shall be dismissed.

**C. Title VII Claims**

As an initial matter, Defendants move to dismiss Plaintiff's claims under Title VII of the Civil Rights Act of 1984, 42 U.S.C. 2000e *et seq.*, as time-barred and for failure to exhaust administrative remedies. To maintain a Title VII claim, a plaintiff must file his charge within 180 days after the alleged discriminatory act occurred.[1] *See* 42 U.S.C. § 2000e-5(e); *Norman-Bloodsaw v. Lawrence Berkeley Lab*, 135 F.3d 1260, 1266 (9th Cir. 1998). The limitations period begins to run when the plaintiff knows or has reason to know of the injury forming the basis of his action. *Id.* Title VII claims based on discrete discriminatory or retaliatory acts that took place outside the limitations period are time-barred. *National Railroad Passenger Corp v. Morgan*, 536 U.S. 101, 122 (2002). Where a plaintiff alleges multiple discrete, discriminatory acts, only those incidents that took place within the limitations period are actionable. *Id.* at 114. However, a charge alleging a hostile work environment claim will not be time-barred so long as

---

[1] Had Plaintiff first filed a charge with the applicable state or local agency, a 300-day limitations period would apply. 42 U.S.C. § 2000e-5(e)(1). As he only filed a charge with the EEOC, the 180-day rule controls.

ORDER ON SUMMARY JUDGMENT - 10

all acts that constitute the claim are part of the same unlawful employment practice and at least one falls within the limitations period. *Id.* at 122.

Accordingly, only those discrete, allegedly discriminatory actions that took place within 180 days of the filing of Plaintiff's EEOC complaint on October 27, 2010 are not time-barred. In support of his Title VII claim, Plaintiff's complaint alleges three such discreet acts: (1) WSDOT's refusal to promote Plaintiff, (2) WSDOT's demotion of Plaintiff, effective February 1, 2010, and (3) WSDOT's termination of Plaintiff on August 19, 2010. Plaintiff does not contest that both the lack of promotion and the demotion occurred outside of the 180-day filing period and are thus no longer actionable. As to Plaintiff's hostile work environment claim, Plaintiff contends that WSDOT fostered a hostile work environment from 2006 and culminating in his termination in October, 2010. As his termination anchors his hostile work environment claim within the filing period, the Court finds that this claim, like his termination claim, is not time-barred.

Defendants also move to dismiss Plaintiff's hostile work environment claim based on Plaintiff's failure to exhaust his administrative remedies with respect to that claim as it was not explicitly stated in his 2010 EEOC complaint. Because typical complaints are filled out by non-attorneys, courts construe the EEOC charge with "utmost liberality," and it is sufficient that the EEOC is apprised of the alleged discriminatory parties and acts. *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003). Given this standard, the Court finds that Plaintiff's stated allegations that he was "harassed" and "subjected to different terms and conditions of employment" (Dkt. # 55, Ex. 13) sufficiently notified the agency of a hostile work environment such that this charge survives dismissal for lack of exhaustion. *See Sosa v. Hiraoka*, 920 F.2d 1451, 1457 (9th Cir.

1  1990).The Court thus considers the merits of Plaintiff's Title VII claims for disparate treatment

2  discrimination and retaliation premised on Plaintiff's allegedly wrongful termination as well as

3  for hostile work environment.

4    **1. Disparate Treatment**

5        Section VII of the Civil Rights Act prohibits an employer from taking an adverse

6  employment action against an employee because of his or her race or national origin. 42 U.S.C. §

7  2000e-2(a)(1). In the absence of direct evidence of discrimination, courts employ the three-part

8  burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

9  (1973). *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008). Alternatively,

10 when responding to a motion for summary judgment, a plaintiff may proceed by producing

11 "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than

12 not motivated [the employer]." *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007)(internal

13 citation and quotation omitted).[2]

14

15       Under the *McDonnell Douglas* burden-shifting framework, the burden of production first

16 falls on the plaintiff to make out a prima facie case that gives rise to an inference of unlawful

17 discrimination. *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005). A

18 plaintiff establishes a prima facie case of disparate treatment by showing that "(1) [he] belongs to

19 a protected class, (2) [he] was performing according to [his] employer's legitimate expectations,

20 (3) [he] suffered an adverse employment action, and (4) other employees with qualifications

21 similar to [his] own were treated more favorably." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217,

22 1220 (9th Cir. 1998)(citing *McDonnell Douglas*, 411 U.S. at 802). If the plaintiff succeeds in

23

24

25

26

---

[2] If not procedurally defaulted and barred by sovereign immunity, Plaintiff's claims under the WLAD and Sections 1981 and 1983 would be similarly analyzed, and dismissed, under these frameworks. *See Jones v. King County Metro Transit*, 2008 WL 2705138, *13 (W.D. Wash. 2008)

establishing a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a reason, the burden then shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802-805; *Coghlan*, 413 F.3d at 1094.

Here, Plaintiff confusingly attempts to proceed under both the *McDonnell Douglas* burden-shifting framework, discussed in his initial Response brief, and the motivating factor framework, discussed in his Supplemental Response. Under either framework, Plaintiff's disparate treatment claim fails. First, Plaintiff has failed to put forth any evidence, direct or circumstantial, to establish that WSDOT acted with any intent to discriminate against him in its decision to terminate his employment. Mangaliman's termination letter and the testimony of his supervisors proffered ample, performance-based reasons that motivated his termination without suggesting any race-based animus. The circumstances surrounding his termination, including repeated attempts to help him succeed despite his continuing serious performance lapses, multiple warnings and hearings on the possibility of termination, and Mangaliman's singularly poor job performance history, also fail to give rise to any circumstantial inference of discriminatory intent. Furthermore, all of the acts that Plaintiff discusses in his Supplemental Response in his attempt to allege discriminatory intent fall outside of the 180-day filing period and are time-barred with respect to Plaintiff's disparate treatment claim. Even under the minimal degree of proof necessary to establish a prima facie case when Plaintiff puts forth evidence of discriminatory intent, Plaintiff has failed to meet his burden.

Plaintiff's disparate treatment claim also fails under the *McDonnell Douglas* burden-shifting framework at the first step because Plaintiff has failed to meet his burden of establishing

a prima facie case of disparate treatment. While Plaintiff has established that he belongs to a protected class and suffered an adverse employment action through his termination, he has not carried his burden to make the requisite showings under the second and fourth prongs. As to the second prong, it is undisputed that Mangaliman was not meeting WSDOT's legitimate expectations for his performance. His work was consistently deemed below standard or unacceptable by his supervisors in multiple core areas, as demonstrated through his performance reviews. He failed to become fully qualified as a Materials Testers as required for his position, both within the standard 60-day deadline and after two and a half years of extensions. He failed an unprecedented number of tests – approximately 60 in 6 years – and had his qualifications revoked for a module that he did pass when he failed to meet testing performance expectations in the field. Where this startlingly poor performance history is compounded by his pattern of sleeping on the job and his failure to follow Nuclear Gauge safety procedures, it is clear that no jury could conclude that Mangaliman met WSDOT's legitimate expectations.

Plaintiff is also unable to establish the fourth prong of his prima facie case because he admittedly cannot show that other employees even had similar qualifications to his own, nonetheless that they were treated more favorably. Mangaliman himself testified that he was not aware of any employee who failed the materials test twice in six years, not to mention 60 times. *See* Dkt. # 55, Ex. 5, p. 180:4-12. In the one instance that another tester failed to properly test in the field, he had his qualifications revoked along with Mangaliman. Without identifying a comparator population, Plaintiff cannot carry his burden. *See Bodgett v. CoxCom, Inc.*, 366 F.3d 736, 744 (affirming district court's finding that Plaintiff failed to carry her initial burden because she did not present legitimate "comparator" evidence on her religious discrimination claim).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

While Plaintiff's inability to make out a prima facie case of disparate treatment ends the inquiry, the Court notes that even if Plaintiff had carried his initial burden, his claim still fails because he has not offered any evidence of pretext. After WSDOT articulated three nondiscriminatory reasons for terminating Plaintiff – his substandard work performance, sleeping on the job, and Nuclear Gauge safety violations – Plaintiff was required to "put forward specific and substantial evidence challenging the credibility of the employer's motive." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). Here, Plaintiff's sole assertion as to pretext is that "WSDOT's justification does not add up." Dkt. # 69, p. 9. Such speculation and belief are insufficient to create a fact issue as to pretext. *Jones*, 2008 WL 2705138, at *13 (citing *Hines v. Todd Pac Shipyards Corp.*, 127 Wash.App. 356, 372 (2005)). As Plaintiff has failed both to make out his prima facie case and to offer evidence of pretext, his disparate treatment claim cannot survive summary judgment.

## 2.   Retaliation

An employer violates Title VII by retaliating against an employee who has "opposed any practice made an unlawful employment practice" under the statute. 42 U.S.C. § 2000e-3(a). Courts apply the *McDonnell Douglas* burden-shifting framework to a Title VII retaliation claim. *Jurado v. Eleven-Fifty Corp.*, 813 F.3d 1406, 1411 (9th Cir. 1987). Alternatively, Plaintiff may proceed by producing "direct or circumstantial evidence that a discriminatory reason more likely than not motivated the employer." *Metoyer*, 504 F.3d at 931. As Plaintiff argues his retaliation claim solely under the *McDonnell Douglas* framework, the Court applies this framework as well.

To make out a prima facie case of retaliation, Plaintiff must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a

causal link exists between the protected activity and the adverse action. *Id.*  A protected activity includes filing a charge or complaint. 42 U.S.C. §2000e-3(a); *Raad v. Fairbanks North Star Borough Schl. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003). Courts can infer a causal link from the proximity in time between the protected activity and the allegedly retaliatory employment decision. *Id.*

As Plaintiff has not met his burden of making out a prima facie case, Plaintiff's retaliation claim again fails at this first stage. In order to make the required showing under the first prong, Plaintiff points to a complaint that he filed with the WSDOT Office of Equal Opportunity in 2006 as well as four OEO complaints filed between February 12, 2010 and June 2010, following his demotion. As to the second prong, Plaintiff points to WSDOT's decisions to demote him in January 2010 and to terminate him in August 2010. In his Supplemental Brief, Plaintiff also adds WSDOT's imposition of a 60-day deadline for him to achieve materials tester qualifications by April 2007 as an adverse action.

As discussed supra, only those adverse actions that took place within 180-days of the filing of Plaintiff's EEOC complaint in October 2010 remain actionable. Consequently, any allegation of retaliation based on Plaintiff's demotion or the imposition of a 60-day deadline in 2007 fail. Even if they were not time-barred, Plaintiff's retaliation claim based on his demotion fails for lack of causal connection: his 2010 OEO complaints took place after, and consequently could not have motivated, WSDOT's decision to demote him. The lapse in time between his 2006 OEO complaint, which Plaintiff himself dropped, and his demotion and termination was far too attenuated for any jury to identify a causal nexus. As to the imposition of 60-day testing deadline in 2007, Plaintiff does not identify any protected activity with which it is causally

connected. Moreover, the 60-day time period was not an adverse action: it was the standard

certification deadline for all similarly situated WSDOT employees, and Plaintiff's failure to

comply did not produce any negative employment repercussions until his demotion two and a

half years later.

Though WSDOT's decision to terminate Plaintiff remains actionable, Plaintiff still fails

to show a causal nexus between his termination and his 2010 OEO complaints. The employment

action did not "follow on the heels of his complaints," *Ray v. Henderson*, 217 F.3d 1234, 1244

(9th Cir. 2000), but rather came four months after he filed his last OEO complaint. Any causal

nexus that would extend across this four-month period is broken by Plaintiff's continuing

substandard performance despite his placement on a Performance Improvement Plan and

assistance by Transportation Engineer Curtis as well as further incidents of sleeping and Nuclear

Gauge violations, all of which legitimately motivated WSDOT's decision to terminate his

employment. Even if Plaintiff had carried his initial burden, he has failed to introduce any

evidence that Defendant's legitimate, non-discriminatory reasons to terminate his employment

were pretext. Plaintiff's retaliation claim is accordingly dismissed.

### 3.   Hostile Work Environment

To prevail on a hostile work environment claim premised on race or national origin, a

plaintiff must show that: (1) he was subjected to verbal or physical conduct of a racial nature, (2)

the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the

conditions of his employment and create an abusive work environment. *Vasquez*, 349 F.3d at

642. *See also*, *Ng v. Potter*, 2009 WL 3836045, *3 (W.D. Wash. 2009). To determine whether

the conduct was sufficiently severe or pervasive to violate Title VII, the Court considers the

totality of circumstances, including the severity and frequency of the conduct, whether it was physically threatening or humiliating or instead a mere offensive utterance, and whether it unreasonably interfered with an employee's work performance. *Vasquez*, 349 F.3d at 642. A plaintiff must show that the work environment was abusive from both a subjective and objective point of view. *Id.; Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995). Even if a hostile work environment exists, an employer is only liable for failing to remedy adverse conduct about which it knew or should have known. *Id.*

In support of his hostile work environment claim, Plaintiff points to several occasions on which his supervisors allegedly called him a "dumb Filipino." *See* Dkt. # 70, ¶¶ 10-13. Specifically, he points to an occasion in 2006 when a supervisor allegedly "chew[ed] [him] out" and another on August 18, 2009, when he contends that a supervisor yelled at him and called him a "dumb Filipino" the day that he produced faulty asphalt testing results. Dkt. # 55, Ex. 5. Mangaliman also testified that he was called "dumb Filipino" a "few times" while at WSDOT, though he could not recall further specific incidents. *Id.* at p. 3. In his Supplemental Response, Plaintiff further contends that WSDOT supervisors fostered a hostile work environment by scrutinizing his conduct, subjecting him to extensive performance testing, and generally creating "an environment where any reasonable person can fail." Dkt . # 83, p. 11. Plaintiff contends that, taken as a whole, the conduct of WSDOT supervisors and employees was sufficiently severe to create an abusive work environment for him.

Upon careful review of the record, the Court is unable to find that the conduct alleged was sufficiently severe or pervasive to make out a hostile work environment claim. As an initial matter, the principle instance of racial hostility that Plaintiff recalls – supervisor Burkholder's

conduct on April 18, 2009 – is undermined by the record. Not only does Burkholder deny that the event occurred but claims that it could not have, as he was away on his honeymoon during the episode. *See* Dkt. # 53, ¶ 7. Even accepting Plaintiff's version of the events as true despite such contradictions, the conduct of which Plaintiff complains does not rise to the level necessary to state his claim. It is well-established that neither "offhand comments" nor "isolated incidents (unless extremely serious)" constitute a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Even if the comments that Plaintiff contends he heard were uttered with some frequency, they were not sufficiently severe or physically threatening to render his employment environment hostile, and Plaintiff has not made any showing that these comments hindered his work performance. Indeed, the Ninth Circuit has rejected hostile work environment claims involving far more serious conduct. *See Vasquez*, 349 F.3d at 643 (holding that "no reasonably jury could have found a hostile work environment" despite manifold allegations of racial discrimination, including "that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos," etc.). As to the panoply of tests to which Plaintiff was subjected, Plaintiff has not put forward any grounds for the Court to find that these were anything other than a rational response by a patient employer to Mangaliman's continuing inability to perform at expected and requisite standards.

   Even construing all facts in favor of Plaintiff, he has not shown that there is an issue of fact that would support a hostile work environment claim, and that claim shall accordingly be dismissed.

**D. Motions to Strike**

In his Supplemental Response, Plaintiff moves to strike numerous declarations and exhibits in support of Defendants' summary judgment motion on the grounds that they contain testimony and material that are inadmissible as evidence, principally on hearsay grounds. The contested exhibits attached to the Declarations of Johnson, Dale, Lindberg, and Strand contain employee performance reviews, official letters of concern, performance improvement plan documents, and other records kept in the course of regularly conducted business activity. The Court finds this evidence admissible under the business records exception to the rule against hearsay, FRE 803(6). The majority of these documents were also signed by Plaintiff himself and are thus also adopted admissions, which are not hearsay per FRE 801(d)(2)(B). Plaintiff further seeks to strike deposition testimony by Plaintiff himself attached as an exhibit to the Dale Declaration. Plaintiff's own testimony is also admissible as an adopted admission under FRE 801(d)(2)(B).

The Court further declines to strike exhibits attached to the Hart Declaration as well as statements by Heizenrader in his Declaration concerning the unprecedented nature of Plaintiff's testing failure rate. The hand-written notes in Exhibit 1 of the Hart Declaration are admissible as present sense impressions, excepted from hearsay under FRE 803(1). They are also recorded into Hart's Declaration and admissible therein based on his personal knowledge and competence to testify as per Federal Rule of Civil Procedure 56(c)(4). The Court disagrees that photographic and video evidence of Plaintiff sleeping on the job lacks proper foundation. Any questions about their foundation are put to rest by the Supplemental Hart Declaration. Dkt. # 87. The Court disagrees that the statements made by Heinzenrader in his Declaration constitute improper

1  opinion testimony, as they too are based on his personal observations and institutional

2  knowledge, and his competence to testify is not in question. *See* Fed.R.Civ.P. 56(c)(4).

3

4

5                              **CONCLUSION**

6      For the reasons set forth herein, the Court does hereby find and ORDER:

7  (1) Defendants' Motion for Summary Judgment (Dkt. # 52) is ; GRANTED as to

8      Plaintiff's claims under RCW 49.60, §§ 1981 and 1983, and Title VII of the Civil

9      Rights Act of 1964 against all remaining Defendants. These claims are DISMISSED

10     with prejudice.

11 (2) Plaintiff's Motions to Strike are DENIED.

12 (3) This Order disposes of all claims remaining in this action. The Clerk shall enter

13     judgment in favor of Defendants on all claims.

14

15

16     DATED this 26 day of March 2014.

17

18

19

20     RICARDO S. MARTINEZ
       UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

ORDER ON SUMMARY JUDGMENT - 21